IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM M. CONRAD                    *

          Plaintiff            *

        vs.                  *   CIVIL ACTION NO. MJG-14-51

CSX TRANSPORTATION, INC.,            *

         Defendant            *

*       *       *       *       *       *       *       *       *

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT AND EXPERT TESTIMONY

The Court has before it Defendant's Motion to Exclude Expert Testimony and Motion for Summary Judgment [Document 33], and the materials submitted relating thereto.  The Court finds a hearing unnecessary.

I.   FACTUAL BACKGROUND[1]

In April 2003, Plaintiff William Conrad ("Conrad") became an employee of Defendant CSX Transportation, Inc. ("CSXT") as a conductor.  On the day of the incident at issue, August 26, 2011, Conrad was an Inner Divisional road conductor at the Cumberland, Maryland rail yard.

The day of August 26, 2011 did not go well for Conrad. First, two CSXT supervisors observed Conrad commit what they said were operational testing failures.  Conrad was told that he had committed rules violations and that the CSXT field administration

---

[1]     For purposes of summary judgment.

group would determine what, if any, discipline was warranted.[2]
Shortly thereafter, Conrad had the accident here at issue.

Conrad was scheduled to work on a train and walked from the
train tracks to the parking lot to meet the transport taxi that
would take him to the front of the train.  Conrad walked along
the "helper walkway," which is a path of ballast[3] piles that
raises the surface of the path to a level even with the top of
the railroad track rails so that one does not need to step up to
get over the rails.  The helper walkway crosses the tracks and
leads to the parking lot.

A yellow steel barrier, approximately twelve inches high,[4]
separates the helper walkway from the parking lot.  The barrier,
which runs continuously along the edge of the parking lot, is
intended to prevent cars in the parking lot from getting too
close to the train tracks.  The asphalt surface of the parking
lot ends approximately one foot shy of the barrier.  There is a

---

[2]   "Serious offense" violations were brought against Conrad, and
he filed suit in this Court, alleging retaliation for his having
reported CSXT safety violations and objected to union members
being asked to engage in unsafe conduct.  See Conrad v. CSXT,
WMN-13-3730.  Judge Nickerson of this Court granted summary
judgment to CSXT.  See [Document 31] in WMN-13-3730.  Conrad's
appeal is pending before the United States Court of Appeals for
the Fourth Circuit.
[3]   Coarsely ground stone, somewhat larger in size than gravel,
used to hold railroad ties (the support for rails) in place.
[4]   The Complaint alleges that the barrier "was approximately 18
inches high."  Compl. ¶ 13.  However, Conrad's designated
liability expert testified in his deposition that "based on the
photos that [he] looked at, [the barrier was] at least 12 inches
high."  Duffany Dep. 56:12-18; see also id. 27:15-16 ("I
estimated it to be at least a foot high. . . .").

ten- to twelve-foot-wide area between the last rail and the
barrier, along which CSXT employees could walk to get around the
barrier to the parking lot.  Duffany Dep. 18:2-19:20; Stafford
Dep. 86:13-17.



Instead of walking around the barrier, Conrad chose — which
he acknowledges "was the typical practice of CSXT employees"[5] —
to step over the barrier.  Conrad testified at his deposition
that he stepped over the barrier with his right foot, which
landed in a depression in the ballast, dirt, and stone mixture on

---

[5]     [Document 37] at 2.

the parking lot side of the barrier.[6]  Conrad Dep. 90:12-91:5,
95:6-9, 163:2-164:20.  After his right foot landed in the
depression – which he testified was roughly three inches deep and
appeared to have been made by a car tire spinning out – Conrad
lost his balance and started to fall.  Id. 95:8-14, 96:16-97:3.
He was unable to bring his left leg over the barrier and fell
over on his right side at the edge of the parking lot.  Id. 89:2-
12, 99:21-100:4.  Conrad testified: "I tried to brace myself with
my right arm, but I was 360 pounds, then, too."  Id. 98:18-19.



ballast, dirt, and
stone mixture

1st - where Conrad's
right foot landed

walkway
(ballast)

steel barrier

2nd - where Conrad's
left foot caught

edge of the parking lot

3rd - where Conrad landed

---

[6]    Conrad testified at his deposition that he did not have a
clear view of where he placed his right foot because "the barrier
was blocking [his] view."  Conrad Dep.  197:4-11

After he fell, Conrad got up and walked to the yard office. Id. 101:1-5.  He asked CSXT employees to call an ambulance and was transported to hospital.  Id. 106:1-6, 110:3-10.

Conrad contends that he suffered injuries to, inter alia, his right shoulder, arm, and hip and is in constant pain.  Compl. ¶ 19.  As of November 14, 2014 - the date on which CSXT filed the instant Motion - Conrad had not returned to work. See [Document 33-1] at 2.

In the Complaint, filed in the United States District Court for the Eastern District of Pennsylvania, Conrad presents a claim against CSXT under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., contending that CSXT was negligent in various ways.  The case was transferred to this Court by stipulation of the parties.  [Document 17].

By the instant Motion, CSXT seeks to exclude the testimony of Conrad's liability expert pursuant to Rule 702 of the Federal Rules of Evidence and seeks summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

II.  EXPERT TESTIMONY

Conrad has "retained Mr. Raymond A. Duffany [("Duffany")] as his liability expert." [Document 37] at 5.  Conrad contends that Duffany has expertise "in railroad industry practice, including walkway and yard safety" and that Duffany will testify at trial

5

"[b]ased on his experience . . . that [the steel] barrier [at the end of the walkway] was unsafe where it was placed."  [Document 37] at 5-6.


A.   Legal Standard

A witness may be qualified as an expert "by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702. Such a witness "may testify in the form of an opinion or otherwise if:"

> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)  the testimony is based on sufficient facts or data;
>
> (c)  the testimony is the product of reliable principles and methods; and
>
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

Id.

Trial courts have a "gatekeeping" obligation with respect to the admissibility of scientific expert testimony – "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). This "'gatekeeping' obligation—applies not only to testimony

based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999).  The United States Court of Appeals for the Fourth Circuit has stated that "although '[e]xperiential expert testimony . . . does not rely on anything like a scientific method,' such testimony is admissible under Rule 702 "so long as an experiential witness 'explain[s] how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts.'"  United States v. Bynum, 604 F.3d 161, 167 (4th Cir. 2010) (alterations in original) (citations omitted).

"Reliability is to be determined by the 'principles and methodology' employed by the expert." Holesapple v. Barrett, 5 F. App'x 177, 179 (4th Cir. 2001).  A "trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho, 526 U.S. at 152.  Moreover, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

B.    Discussion

1.    Duffany's Opinion

Duffany testified at his deposition that he did not intend to offer an opinion as to any alleged acts of negligence by CSXT other than his opinion regarding the barrier.  Duffany Dep. 50:2-52:11.[7]

Duffany wrote in his Engineering Report of Expert Opinion ("the Report") that, "[i]n [his] opinion the existence of th[e] barrier created an unnecessary hazard."  [Document 33-11] at 13. He testified at his deposition that his focus was on the steel barrier and that he did not intend to offer an opinion on any other aspect of the helper walkway.  See, e.g., Duffany Dep. 50:2-52:9 ("[I]f you zero in on that particular area that he stepped in and ask me if that was a violation of any maintenance requirements on walkways or roadways, I'm not going to have an adverse opinion on that. . . . What I'm saying is, the barrier shouldn't have been there.").

In the Report, Duffany wrote that "the barrier which existed in the helper walkway at the time of [Conrad's fall] constituted a tripping or falling hazard; and CSX was not in compliance with railroad industry standards and practices relating to employee

---

[7]    See, e.g., Duffany Dep. 52:1-9 (Q: And just so we're clear, you're not going to be offering any opinions that, whatever that surface was on the other side of that barrier . . . was not reasonably safe?  A: I don't believe so.  Q: Your focus, really, is the yellow barrier.  A: Correct.").

walkways." [Document 33-11] at 14.  Moreover, at his deposition,
Duffany testified that if the barrier had been "within the six-
to seven-inch range, that would be within the normal height to
step over something without worrying [because] it wouldn't be
much different than taking a normal step.  You raise your foot up
a few inches and you raise your step up when you are walking
normally."  Duffany Dep. 31:20-32:1.


> 2. <u>The Objection</u>

CSXT contends that Duffany's opinions and proposed testimony
are "inadmissible pursuant to Rule 702" of the Federal Rules of
Evidence because they are "speculative and lack[] a sufficient
basis." [Document 33] at 1, [Document 33-1] at 6-8.  CSXT argues
that "Mr. Duffany's opinion amounts to no more than <u>ipse</u> <u>dixit</u> or
'because I said so.'" [Document 33-1] at 7.  CSXT does not appear
to be contending that Duffany would be unqualified to testify as
an expert in the railroad industry as to an opinion that had a
sufficient basis.


> 3. <u>The Basis for Duffany's Opinion</u>

Duffany opines that CSXT was negligent in its construction
of the barrier.  He testified at his deposition that:

> [CSXT] <u>could have</u> either made an opening
> there for people to walk through, or they
> could have - if they didn't want to do that,

9

> they could have issued instructions for
> people to use to walk parallel to it around
> either end of that. Those are the things
> that could have been done.

Duffany Dep. 53:13-19 (emphasis added). He also testified that:

> [CSXT] should have, one, either removed [the
> barrier], or, two should have issued an
> instruction that said to go around it.

Id. 54:1-5 (emphasis added).

Duffany renders this opinion although, for years, stepping over the barrier – safely, without incident – "was the typical practice of CSXT employees"[8] and Conrad himself had done so "hundreds of times" before the accident.[9] He supports this opinion with no basis other than his own personal view.

Duffany testified that he was not aware of any federal rules or railroad industry standards governing the placement of barriers like the one at issue in the instant case:

> Q. Based upon your practice and experience
>    in the railroad industry separate from
>    litigation, are you aware of any Federal
>    Rules or guidelines that are set for the
>    determination of what these barriers
>    should look like?
>
> A. No, I'm not.

---

[8]  [Document 37] at 2.

[9]  Conrad testified at his deposition that he had stepped over the barrier and put his foot down on the other side "[h]undreds of times" and "never had any problem." Conrad Dep. 91:1-10. Moreover, both he and Duffany testified that they were not aware of anyone tripping or falling over the barrier before August 26, 2011. Id. 207:1-10; Duffany Dep. 25:10-13.

Q.    Are you familiar with any railroad
      industry standards, generally, that
      would exist that would determine what
      said barriers should look like?

A.    No, I'm not.

Q.    In your practice and experience at the
      particular railroads for whom you
      worked, were there any standards, rules,
      guidelines, etcetera, that determine
      what a barrier should look like?

A.    No. . . .

      . . . .

Q. All right. Is there any rules, guidelines,
      et cetera, that exist that determine
      where such barriers should be located?

A.    Not that I'm aware of.

Id. 11:17-13:7 (emphasis added).

Conrad contends that Duffany based his opinion on: "his

decades in the railroad industry;" "his knowledge of the theory

of three-point protection;" and "the ['two-step project'[10]]

methodology used in the industry" for determining the placement

of a barrier. [Document 37] at 12. However, Duffany testified

at his deposition that:

      [In terms of what a barrier should look
      like,] I have to say, first, you have to
      determine what the area is there for and

---

[10]   See [Document 37] at 12 ("Mr. Duffany explained that the
process used to determine the placement of a barrier is a two-
step project. First, the area where the barrier is to be placed
must be evaluated. Second, it must be determined whether the
barrier needs to be solid or will need to be breached or passed
through.").

> whether it's going to be – needed to be
> breached or passed through.
>
> [I]n most cases on the railroad, when you're
> stepping on or over things, you're provided
> a mechanism where you're able to maintain
> three-point contact. . . . [T]here isn't a
> specific rule about [three points of
> contact], but within the railroad industry,
> it would be common sense that, if you have to
> step up on a step . . . you do have to
> maintain three points of contact."

Duffany Dep. 12:6-9, 27:16-29:4 (emphasis added).

As to the barrier height, Duffany testified:

> You know, I'm just saying that, when you're
> stepping on or over something, typically,
> like a staircase where you only have to
> raise your foot, approximately, seven inches
> on a normal riser, that you would be
> afforded three-point contact. I'm not saying
> it's required, . . . In this particular
> case, [Conrad] had to stop and raise his leg
> up . . . what I consider an abnormal height.

Id. 33:4-14 (emphasis added).

The Court does not find that Duffany's opinion "is the product of reliable principles and methods."  Fed. R. Evid. 702(c).  There is no adequate basis for an opinion that the barrier at issue was not reasonably safe, but a seven-inch-high barrier would have been.  Cf. Bynum, 604 F.3d at 167.  Nor is there any discernable basis related to a government or industry-wide standard or to regular practices in the railroad industry.

 The decisions upon which Conrad seeks to rely are inapposite to the issue presented here because those cases

addressed proffered experts' qualifications, rather than the

basis of their opinions.  See Gila Valley, G. & N. Ry. Co. v.

Lyon, 203 U.S. 465, 474-75 (1906);[11] United States v. McDougald,

650 F.2d 532, 533 (4th Cir. 1981).[12]  Here, however, CSXT does

not challenge Duffany's qualifications as an expert in the

railroad industry.  Rather, CSXT contends that Duffany has not

provided a sufficient basis for his opinion that the "barrier

created an unnecessary hazard."  [Document 33-11] at 13.

In sum, to be admissible, expert opinion evidence must be

supported "by something more than the 'it is so because I say it

is so' of the expert."  Holesapple, 5 F. App'x at 180.  Here,

Conrad would seek to have the Court accept Duffany's expert

opinion based on "[his] qualifications, [his] conclusions and

---

[11]   Gila Valley, G. & N. Ry. Co. v. Lyon, 203 U.S. 465, 474-75
(1906) ("Certain of the witnesses for plaintiff were called to
prove that, in their opinion, the company had not furnished a
reasonably safe place for its employees to work in.  This was
objected to on the ground that the witnesses testifying to it
were not properly experts and should not be permitted to testify.
One witness, who testified that the buffer was not a reasonably
safe and proper one, said that he had been railroading for
fifteen years, following the business of trackman during that
time; that it was his business to go over the track and see if it
was in proper shape, and that he had had something to do with the
construction of a railroad; . . . . All the witnesses had had
practical experience on railroads, and were familiar with
structures and the character of buffers mentioned in the
evidence.  There was certainly enough to call upon the court to
decide upon the admissibility of their opinions under these
circumstances . . .")
[12]   United States v. McDougald, 650 F.2d 532, 533 (4th Cir.
1981) ("The defense strongly attacked the qualifications of the
government expert, and the judge's instruction merely gave the
jurors a benchmark to use in examining those qualifications.")

[his] assurances of reliability.  Under <u>Daubert</u>, that's not

enough."  <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 43 F.3d 1311, 1319

(9th Cir. 1995).

Accordingly, the Court shall exclude Duffany's testimony.


III.  <u>SUMMARY JUDGMENT</u>

A.   <u>Summary Judgment Standard</u>

A motion for summary judgment shall be granted if the

pleadings and supporting documents "show[] that there is no

genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The well-established principles pertinent to summary

judgment motions can be distilled to a simple statement:  The

Court may look at the evidence presented in regard to a motion

for summary judgment through the non-movant's rose-colored

glasses, but must view it realistically.  After so doing, the

essential question is whether a reasonable fact finder could

return a verdict for the non-movant or whether the movant would,

at trial, be entitled to judgment as a matter of law.  <u>See, e.g.</u>,

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-323 (1986); <u>Anderson</u>

<u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Shealy v.</u>

<u>Winston</u>, 929 F.2d 1009, 1012 (4th Cir. 1991).

Thus, in order "[t]o defeat a motion for summary judgment,

the party opposing the motion must present <u>evidence</u> of specific

facts from which the finder of fact could reasonably find for him or her." Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).  However, "self-serving, conclusory, and uncorroborated statements are insufficient to create a genuine issue of material fact."  Int'l Waste Indus. Corp. v. Cape Envtl. Mgmt., Inc., 988 F. Supp. 2d 542, 558 n.11 (D. Md. 2013); see also Wadley v. Park at Landmark, LP, 264 F. App'x 279, 281 (4th Cir. 2008).

When evaluating a motion for summary judgment, the Court must bear in mind that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Celotex, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).


   B.   Federal Employers' Liability Act

Under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq., "[e]very common carrier by railroad in the . . . United States shall be liable in damages to any person suffering injury while he is employed by such carrier . . . due to its negligence.  45 U.S.C. § 52.  FELA "is founded on common-law concepts of negligence and injury."  Urie v. Thompson, 337 U.S. 163, 182 (1949).  In addition, "[r]easonable foreseeability

of harm is an essential ingredient of FELA negligence." Brown v. CSX Transp., Inc., 18 F.3d 245, 249 (4th Cir. 1994); see also CSX Transp. v. McBride, 131 S.Ct. 2630, 2643, _ U.S. _ (2011).

"Railroads have a general duty under FELA to provide their employees with a reasonably safe workplace, including safe tools and equipment, to perform the assigned tasks." Jordan v. S. Ry. Co., 970 F.2d 1350, 1353 (4th Cir. 1992).  "This duty includes inspecting the workplace and taking reasonable precautions to protect employees from possible harm." Brown, 18 F.3d at 249.


C.    Discussion

     1.    Negligence

"To withstand summary judgment, a FELA claimant must . . . show the existence of a triable issue of fact as to the traditional common-law elements of negligence, including duty, breach, and causation." Tootle v. CSX Transp., Inc., 746 F. Supp. 2d 1333, 1337 (S.D. Ga. 2010).  Although "FELA imposes on [CSXT] a duty to take reasonable precautions to inspect the workplace and protect its employees from possible danger, [Conrad] still carries the burden of proving some act of negligence by [CSXT]." Deans v. CSX Transp., Inc., 152 F.3d 326, 330 (4th Cir. 1998) (internal citation omitted).

As discussed above, the Court finds inadmissible the proffered opinion of Duffany that CSXT was negligent.  "Once that

testimony is deemed inadmissible, it is self-evident that the evidence is insufficient to" to permit a reasonable jury to find that CSXT failed to provide a reasonably safe workplace by placing the twelve-inch-high yellow steel barrier at the edge of the parking lot. Bryte ex rel. Bryte v. Am. Household, Inc., 429 F.3d 469, 476 (4th Cir. 2005).

Conrad contends that "even should the Court preclude Mr. Duffany's opinion . . . , the jury can still evaluate the evidence[ because a] typical jury can understand testimony about the dangers of having to step abnormally high over a barrier, the dangers of placing a barrier in a walkway, or depressions in the parking lot." [Document 37] at 19.  However, the only evidence that Conrad presented to prove the "abnormally high" barrier or the "dangers" of the location of the barrier was Duffany's opinion.[13]  Moreover, Conrad has not presented any evidence from

_____

[13]   Conrad advances two additional arguments that he contends would allow a jury to find that CSXT breached its duty.  First, he points out that after his fall, CSXT "cut an opening in the rail barrier so that employees no longer had to awkwardly climb over it," which, he suggests, indicates "that it was negligent for CSXT not to make this modification before the accident." [Document 37] at 19.  The decision to make an opening in the barrier is a subsequent remedial measure, which is not admissible to prove a defendant's negligence.  Werner v. Upjohn Co., 628 F.2d 848, 853 (4th Cir. 1980); see also Fed. R. Evid. 407 ("When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove . . . negligence . . . .").

Second, Conrad contends that "the jury should be given a spoliation instruction" because "CSXT took photographs of the accident scene and Mr. Baer, a CSXT supervisor, had Plaintiff mark on the photograph where his accident occurred," but "CSXT

which a reasonable jury could find that the walkway itself, even assuming it consisted of "poorly maintained gravel," [Document 37] at 19, was not reasonably safe.

Conrad appears to suggest that his "[deposition] testimony alone" would be sufficient to prove that the barrier was unreasonably dangerous because, he argues, the testimony "establishes that he lost his balance and fell because of the height of the rail barrier and/or poorly maintained gravel with a depression in it." [Document 37] at 19.  Even if this testimony were viewed as more than Conrad's opinion, it would be insufficient.  Such self-serving deposition testimony is not sufficient to create a material dispute of fact and defeat summary judgment.  Wadley v. Park at Landmark, LP, 264 F. App'x 279, 281 (4th Cir. 2008) ("[Plaintiff's] own self-serving, unsubstantiated statements in opposition to [Defendants'] evidence in this regard is insufficient to stave off summary judgment."); DiQuollo v. Prosperity Mortgage Corp., 984 F. Supp. 2d 563, 570 (E.D. Va. 2013) ("The law is well established that uncorroborated, self-serving testimony of a plaintiff is not

---

has since admitted to no longer having that photograph." [Document 37] at 19-20.  Conrad argues that "[a] jury can infer that had the photograph not been destroyed that it would have supported Plaintiff's testimony about the accident."  Id. at 20. However, in his deposition, Conrad testified he never made notations on photographs of the accident scene.  See Conrad Dep. 182:20-183:9 ("Q. And if Mr. Baer testified that you made a notation on one of the photographs, that was not the truth?  A. That's not the truth.").

sufficient to create a material dispute of fact sufficient to defeat summary judgment.").

In sum, to support his negligence claim, Conrad has no more than his unsupported opinion[14] that the steel barrier was "abnormally" high, and he has failed to offer any other evidence that the helper walkway was otherwise unsafe.  See Mettle v. CSX Transp., Inc., 221 F. App'x 262, 264 (4th Cir. 2007); see also Gottshall, 512 U.S. at 543 ("FELA 'does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur.'" (citation omitted)).

Accordingly, the Court concludes that the evidence is insufficient to permit a reasonable jury to find that CSXT breached its duty to provide its employees with a reasonably safe workplace.

---

[14]    And Duffany's opinion, which has been held inadmissible, supra.

2.   Foreseeability

"Reasonable foreseeability of harm is an essential ingredient of FELA negligence." Brown, 18 F.3d at 249; see also CSX Transp., 131 S.Ct. at 2643.  Conrad's "case is lacking as to proof of foreseeability." Robert v. Consol. Rail Corp., 832 F.2d 3, 6 (1st Cir. 1987).

Conrad testified at his deposition that he had used the helper walkway and stepped over the steel barrier "hundreds of times" before August 26, 2011 without incident.  Conrad Dep. 83:14-15, 91:1-93:21.  However, CSXT employees were not required to step over the barrier to get from the helper walkway to the parking lot; they had the option of walking around the barrier along the ten- to twelve-foot-wide area between the last rail and the barrier.[15]  See Stafford Dep. 86:13-17.

Conrad testified at his deposition that certain CSXT employees complained to him about the barrier, but he did not know if any of them had submitted a PI-82 unsafe condition report

---

[15]    Conrad contends that walking around the barrier was not a realistic option because "he would be walking adjacent to a live track (i.e., a track where trains are traveling) [and a] potential unsafe situation would arise if a car from a remote controlled train broke loose because someone walking adjacent to the barrier could be struck by the run-away car." [Document 37] at 3.   However, Conrad testified to having used the helper walkway – which cuts across live tracks – hundreds of times without incident.  Moreover, Duffany - Conrad's own expert – admitted that he did not "have enough information" to give an opinion as to whether it was safer to walk across or around the barrier because he "believe[d] that's a judgment call that each individual would have to make."  Duffany Dep. 34:16-36:10

to CSXT management.  Conrad Dep. 86:14, 201:17-5.  He also testified that he was not aware of anyone tripping or falling over the barrier before August 26, 2011 and, that during the two years he was chairman of the local union, no CSXT employee had complained to him about having tripped over the barrier.[16]  Id. 207:1-10.

Alan Tellier, a CSXT engineer, testified at his deposition that he and other CSXT employees previously complained about potholes in the parking lot because of concerns about damage to their vehicles.  However, he testified that he was not aware of anyone complaining to management about the conditions of the barrier.  Tellier Dep. 49:4-50:18 ("Q. Aside from the pot holes, in terms of helper walkway, the barrier, the section of the barrier that used to be there, or any area around that . . . are you aware of you, or anybody else, complaining to management about any of those conditions before August 26, 2011? . . . A. No.  There was no pot holes in this area.").  Moreover, CSXT Assistant Terminal Superintendent Keith Stafford testified at his deposition that he never received complaints about having to step

---

[16]     Conrad argues that he testified at his deposition he previously complained to CSXT supervisor Ron Baer ("Baer") about the safety of the barrier.  However, at his deposition, Conrad actually testified that he said to Baer – "I couldn't understand why . . . there was a barrier there that that you had to step over and I couldn't understand why that barrier was left intact." Conrad Dep. 85:1-6.  Those comments do not – as Conrad argues – indicate that Conrad complained to CSXT management about the safety of the barrier.  Moreover, Conrad acknowledged that he did not fill out a PI-82 regarding the barrier.  Id. 204:4-5.

over the barrier or about trips and/or falls over the barrier. Stafford Dep. 85:14-86:12.

Conrad has failed to present evidence that CSXT had prior notice, either actual or constructive, that the barrier posed a safety hazard to employees who stepped over it.  Therefore, the Court finds that Conrad has failed to satisfy the reasonable foreseeability requirement.  See Brown 18 F.3d at 250.


3.   Causation

The Court has held that CSXT is entitled to summary judgment due to the absence of evidence adequate to establish negligence or foreseeability.  Hence, CSXT's contentions regarding causation need not – and will not – be addressed herein.


IV.   CONCLUSION

For the foregoing reasons:

1.   Defendant's Motion to Exclude Expert Testimony and Motion for Summary Judgment [Document 33] is GRANTED.

2.   Judgment shall be entered by separate Order.

SO ORDERED, on Tuesday, June 16, 2015.


_____/s/_____

Marvin J. Garbis
United States District Judge